COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Haley
Argued at Fredericksburg, Virginia

COMMONWEALTH OF VIRGINIA

v.      Record No. 0975-18-4

SHOMARI SALIM MOWASI CARROLL

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
NOVEMBER 20, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Frank Webb for appellee.

The Commonwealth appeals the trial court's decision to suppress evidence obtained following the warrantless arrest of Shomari Salim Mowasi Carroll. The trial court found that the arrest occurred within the constitutionally protected curtilage of Carroll's residence in the absence of exigent circumstances. The Commonwealth contends that the trial court was plainly wrong in its holding that the arrest was unconstitutional under the Fourth Amendment, arguing that the police had probable cause and exigent circumstances to effect a warrantless arrest. For the reasons discussed below, we affirm the trial court's ruling to suppress the evidence obtained following Carroll's arrest.

BACKGROUND

"Under settled principles, we address the legal issues arising from a suppression motion 'only after the relevant historical facts have been established.'" Raab v. Commonwealth, 50

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*) (quoting <u>Logan v. Commonwealth</u>, 47 Va. App. 168, 171, 622 S.E.2d 771, 772 (2005) (*en banc*)). We view those facts in the light most favorable to the appellee, the prevailing party below. <u>Id.</u>

At 1:21 a.m., Officer James Lewis saw Carroll leave a bar and walk to a motorcycle in the establishment's parking lot. The motorcycle had a "distinctive motif of painted flames." Carroll mounted the motorcycle and rapidly spun the wheels without moving, causing smoke and "a lot of noise;" a maneuver Lewis referred to as a "burnout." Lewis started to walk toward Carroll, however, Carroll sped away at a high rate of speed. Lewis got in his police car, activated his emergency lights and siren, and followed Carroll. Lewis pursued Carroll for about two miles until it appeared that Carroll was going to stop, but instead Carroll looked at Lewis, made a U-turn, drove against traffic, crossed double yellow lines, and almost collided with Sergeant Matthew Craig Lasowitz's police car, Lasowitz having joined the chase. Lewis discontinued the pursuit when he lost sight of Carroll and Lasowitz instructed him to end the chase. Lewis and Lasowitz returned to the bar and obtained Carroll's name from a credit card receipt. Upon entering Carroll's name into a law enforcement database, they found Carroll's address. The officers also looked at a DMV photograph, and Lewis confirmed that Carroll was the person he had observed exiting the bar and recklessly operating the motorcycle.

Lewis and Lasowitz, now joined by a third officer, proceeded to Carroll's residence. The distinctive motorcycle was in plain view parked at the top of the driveway. The straight driveway led up to and ended at a pergola attached to the side of the house. Part way up the driveway, from the street toward the pergola, there was a walkway to the left of the driveway leading to the front door. Between the walkway and the pergola area, there was a garden bed along the left side of the driveway. Lewis went to the front door and knocked, but no one answered. After a few minutes, Carroll emerged from a side door, coming out from under the pergola. He stood between the top of

the driveway and the walkway to the front door, between the garden bed and the motorcycle. Carroll was barefoot and shirtless, wearing only sweat pants. Carroll confirmed his name, and the officers handcuffed and arrested him at 2:04 a.m. without a warrant. Carroll currently stands indicted for felony eluding.

In the trial court, Carroll argued that he was arrested within the protected curtilage of his home in violation of his Fourth Amendment rights. The Commonwealth argued that Carroll voluntarily presented himself to the officers in a public area of the home and that the officers had probable cause to arrest Carroll. Alternatively, the Commonwealth asserted that there were exigent circumstances, particularly hot pursuit, to arrest Carroll without a warrant. The trial court issued a letter opinion finding that Carroll was within his curtilage when the officers took him into custody, "thereby necessitating a warrant or exigent circumstances in order to effect an arrest within such confines" and concluding that the arrest was "unlawful in the location wherein effectuated." The trial court stated, "Despite having ample time to do so *in the absence of any exigency*, the police did not then seek to obtain a warrant for the arrest of [Carroll]." (Emphasis added). Based on the curtilage finding, the trial court suppressed all evidence obtained subsequent to the warrantless arrest, but did not dismiss the case because the question of whether the Commonwealth's prearrest evidence could prove Carroll's identity was not before the court at that juncture.

ANALYSIS

The Court's analysis begins with defining the appellate issues before us. The Commonwealth's assignment of error states that "[t]he circuit court's holding that [Carroll's] arrest was unconstitutional is plainly wrong and is unsupported by precedent governing arrests under the Fourth Amendment." Carroll contends that this assignment of error is inadequate because it "gives this Court and counsel for appellee no guidance" as to the specific argument the Commonwealth is advancing. We disagree. This is a Commonwealth pretrial appeal, limited to the trial court's

adverse suppression ruling, and the assignment of error adequately narrows the focus for the Court and the parties to that issue. See Findlay v. Commonwealth, 287 Va. 111, 116, 752 S.E.2d 868, 872 (2014) (finding that when an "assignment of error identifies a particular preliminary ruling of the trial court . . . it is sufficiently detailed to warrant consideration on the merits").

In its opening brief, the Commonwealth argues that the officers had probable cause to arrest Carroll without a warrant under the exigency of the circumstances. Although the Commonwealth argued at trial, and in its petition for appeal, that Carroll was not within his curtilage when he was arrested, the Commonwealth now, on brief and by oral argument, does not challenge the trial court's curtilage ruling, thereby conceding that that was a factual finding of the trial court. Carroll argues that the Commonwealth is raising the probable cause and exigent circumstances arguments for the first time on appeal, in violation of Rule 5A:18, and, thus, the argument was not preserved for appeal. Rule 5A:18 directs that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." "[A] trial court must be alerted to the precise issue being raised . . . in order to preserve an issue for appeal." Melick v. Commonwealth, 69 Va. App. 122, 146, 816 S.E.2d 599, 611 (2018).

The Commonwealth filed a written response to Carroll's motion to suppress in which it articulated that Carroll engaged the officers in a high-speed chase, successfully eluded them, and when the officers later found him, Carroll entered a public area of his residence, and the officers acted under the exigency of a "hot pursuit" to arrest him. At the suppression hearing, the trial judge focused on the curtilage question, but indicated that the issues raised in the case were whether "the point where [Carroll] is detained, is that area curtilage or not. If it is curtilage as covered by case law, then [the officers] needed a warrant unless there w[ere] exigent circumstances . . . ." Both parties agreed that the trial court accurately identified the issues in the case.

In its letter opinion, the trial court again focused on the curtilage issue, but made no explicit findings regarding exigent circumstances. The trial court expressly stated, however, that the issues to be decided included whether exigent circumstances existed to allow the officers to breach the curtilage. Therefore, the record reflects that the trial court was sufficiently alerted to the issue the Commonwealth raises on appeal and the argument was preserved for appellate consideration.

As the Commonwealth has abandoned the issue of whether Carroll was arrested on the curtilage of his residence, the Court will assume, without deciding, that the trial court was not plainly wrong in its holding that Carroll was on his curtilage when the officers arrested him without a warrant. On brief and at oral argument, Carroll conceded that the officers had probable cause to arrest him.[1] Thus, the sole issue before the Court is whether the officers acted under exigent circumstances. "On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence. The issue of whether an officer acted with probable cause and under exigent circumstances, however, is a mixed question of fact and law that we review *de novo*." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007) (citations omitted).

The trial court relied on Collins v. Virginia, 138 S. Ct. 1663 (2018), in finding that the officers encroached upon the curtilage of Carroll's residence.[2] The Collins Court, finding that the automobile exception did not allow for a warrantless search within curtilage, left "for resolution on remand whether [the officer's] warrantless intrusion on the curtilage of Collins' house may have

---

[1] We agree with Carroll that the record and law support a finding of probable cause for the charge of felony eluding in the instant case. See Code § 46.2-817.

[2] In Collins, the Court found that "[j]ust like the front porch, side garden, or area 'outside the front window,' the driveway enclosure where [the police] searched the motorcycle constitutes 'an area adjacent to the home and "to which the activity of home life extends,"' and so is properly considered curtilage." 138 S. Ct. at 1671 (quoting Florida v. Jardines, 569 U.S. 1, 6-7 (2013)).

been reasonable on a different basis, such as the exigent circumstances exception to the warrant requirement."[3] Id. at 1675. "[I]t is a 'settled rule that warrantless arrests in public places are valid,' but, absent another exception such as exigent circumstances, officers may not enter a home to make an arrest without a warrant, even when they have probable cause.'" Id. at 1672 (quoting Payton v. New York, 445 U.S. 573 (1980)); Jefferson v. Commonwealth, 27 Va. App. 1, 14, 497 S.E.2d 474, 480-81 (1998) (holding "warrantless entries into a suspect's home in order to arrest a suspect violate the Fourth Amendment unless justified by exigent circumstances or consent"). "[B]eing 'arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home.'" Collins, 138 S. Ct. at 1672 (quoting Payton, 445 U.S. at 588-89); see also Jefferson, 27 Va. App. at 15, 497 S.E.2d at 481 ("Consistent with the common law understanding of the extent of the 'home,' the Supreme Court has held that the Fourth Amendment protections that apply to the house also apply to the 'curtilage' of the house."). The Collins Court made clear that a warrantless arrest or search within the curtilage of a home does not *per se* violate the Fourth Amendment.

"'[E]ach case of alleged exigency' that would justify a warrantless entry turns 'on its own facts and circumstances.'" Evans v. Commonwealth, 290 Va. 277, 292, 776 S.E.2d 760, 767-68 (2015) (quoting Missouri v. McNeely, 569 U.S. 141, 150 (2014)). "A determination of whether exigent circumstances justify a warrantless entry is not based on an analysis of the circumstances considered in hindsight, but is focused on review of the 'circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made.'" Robinson, 273 Va. at 41, 639 S.E.2d at 226 (quoting Verez v. Commonwealth, 230 Va. 405, 411, 337 S.E.2d 749, 753 (1985)). "An officer's subjective motivation or intent is irrelevant to determining whether the

---

[3] Code § 19.2-404 requires this Court to "render its decision not later than 60 days after the filing of the appellee's brief or after the time for filing such brief has expired." The Supreme Court of Virginia, to date, has not rendered a decision on remand, and, thus, this Court does not have the benefit of the Court's exigent circumstances analysis. Collins v. Commonwealth, Record No. 151277.

Fourth Amendment has been violated." Evans, 290 Va. at 292, 776 S.E.2d at 768 (citing Brigham City v. Stuart, 547 U.S. 398, 405 (2006) ("It therefore does not matter here . . . whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence.")). The Court must determine whether "[t]he circumstances, viewed objectively, . . . justify the officer's actions." Id. (citing Stuart, 547 U.S. at 404; Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 845-46 (1981)).

The term "exigent circumstance" has "[n]o fixed legal definition." Id. at 283, 776 S.E.2d at 763. Nevertheless, the Virginia Supreme Court has previously identified the following circumstances as potentially exigent:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Robinson, 273 Va. at 41-42, 639 S.E.2d at 226 (quoting Verez, 230 Va. at 410-11, 337 S.E.2d at 753).

The trial court did not explicitly address the presence or absence of exigent circumstances of the case. Its letter opinion, however, implicitly found an absence of exigent circumstances. The trial court's analysis started from the premise that no exigent circumstances existed. The trial judge in his opening paragraph stated his conclusion that Carroll was arrested within his curtilage, which necessitated a warrant or exigent circumstances to be lawful, but that the arrest was unlawful. It is clear that the trial court found no exigent circumstances allowed for Carroll's warrantless arrest. The record supports this conclusion.

The dissent suggests that several of the factors outlined in Verez were present in this case to establish an exigency existed: there was a degree of urgency limiting the time to get a warrant, the officers were dealing with the serious offense of felony eluding, they had probable cause to arrest Carroll for felony eluding, Carroll was likely to escape if not apprehended, Carroll had demonstrated his willingness to place the officers' safety at risk, and he had recently entered the property after hot pursuit. Id. The Court must consider the evidence in the light most favorable to Carroll, however. Raab, 50 Va. App. at 579, 652 S.E.2d at 146.

Viewing the evidence in this light, the record before the Court does not demonstrate that the officers were faced with exigent circumstances. Between thirty and forty minutes had elapsed between the high-speed chase and Carroll's arrest. After ending their pursuit, the officers returned to the bar to obtain the suspect's name, ran a records check on him, obtained a DMV photograph and address, and traveled to Carroll's residence; thus, the previous pursuit had cooled. The officers acknowledged when they received no response from knocking on the front door of the residence that they would simply get a warrant for Carroll. Carroll then emerged from the residence, shoeless and shirtless, dressed only in sweatpants. He immediately encountered the three officers. One officer was positioned behind the motorcycle parked in the driveway, and another officer was positioned next to it. Additionally, the path of the motorcycle was blocked by a vehicle parked directly behind it. Carroll seemingly posed no threat to the officers, nor did he show any signs that he intended to flee. In fact, he voluntarily spoke with the officers and did not exhibit aggressive behavior towards them. The video evidence reflects no weapon visible in Carroll's hands. Further, there was no "evidence" for Carroll to destroy. Cf. West v. Commonwealth, 54 Va. App. 345, 356, 678 S.E.2d 836, 841 (2009) (finding that exigent circumstances can arise from a need to prevent a defendant from destroying biological evidence). These facts do not support a finding of exigency, and the trial court reasonably concluded that they did not support the warrantless arrest.

CONCLUSION

Carroll led the officers on a high-speed chase. The officers thus had probable cause to arrest Carroll for felony eluding. The officers encroached Carroll's curtilage and arrested him without a warrant. At the time of Carroll's arrest, although they had probable cause, the officers were not faced with any exigency when they encountered Carroll. Accordingly, we affirm the trial court's ruling suppressing the evidence obtained subsequent to Carroll's warrantless arrest and remand for further proceedings.

Affirmed and remanded.

Haley, S.J., dissenting:

I respectfully dissent. In the proceeding below only two contested issues of dispositive fact were submitted for determination: (1) Did the arrest occur within defendant's curtilage; and (2) Did exigent circumstances exist?[4]

In the trial court's written opinion, the trial judge found as a dispositive fact that appellee's arrest did occur within his curtilage.[5] However, while acknowledging the exigent circumstances exception, the trial court neither analyzed nor addressed that second issue of dispositive fact. In short, there was no finding of fact to the existence or non-existence of exigent circumstances. A finding of non-existence of exigent circumstances was a condition precedent to a grant of the motion to suppress.

"The trial judge's main role is the determination of fact . . . ." Anderson v. Bessemer City, 470 U.S. 564, 564 (1985) (quoting Wainwright v. Sykes, 433 U.S. 72, 90 (1977), quoted with approval in Haskins v. Commonwealth, 44 Va. App. 1, 11-12, 602 S.E.2d 402, 407 (2004)). This Court defers to the trial court's findings of fact. "This familiar standard gives full play to the *responsibility* of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U.S. 307, 319 (1979), quoted with approval in Abdullah v. Commonwealth, 53 Va. App. 750, 755, 675 S.E.2d 215, 217 (2009). Before deference can be given to a finding of fact, there must be a finding of fact. "The circuit court conducted no fact finding to which we

---

[4] Appellee asserted, on brief, "At no point in raising the issues relevant to his motion to suppress has Carroll argued that the police failed to have probable cause to arrest him." Further, appellee conceded the existence of probable cause in oral argument before this Court.

[5] The Commonwealth conceded this position on brief and in oral argument before this Court.

will defer." Reston Hosp. Center v. Remley, 63 Va. App. 755, 771 n.9, 763 S.E.2d 238, 247 n.9 (2014).

As the majority correctly states in citing the standard of review on appeal, "[t]he issue of whether an officer acted with probable cause and under exigent circumstances . . . is a mixed question of fact and law that is reviewed *de novo*." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007). When evaluating if exigent circumstances existed, "the court must examine the circumstances as they normally appeared to the law enforcement officer on the scene." Verez v. Commonwealth, 230 Va. 405, 411, 337 S.E.2d 749, 753 (1985).

"No fixed legal definition fully captures the meaning of exigent circumstances." Evans v. Commonwealth, 290 Va. 277, 283, 776 S.E.2d 760, 763 (2015). While there is no definitive list of what facts constitute exigent circumstances, appellate courts have previously recognized the following as relevant factors in making such determination:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Robinson, 273 Va. at 41-42, 639 S.E.2d at 226 (quoting Verez, 230 Va. at 410-11, 337 S.E.2d at 753).

I shall address several of these enunciated factors:

(1) and (9). The officers had been on a high speed chase within the preceding thirty minutes. The defendant "came outside on the side part of the house," "coming around the side of

the house . . . [because] he rents the basement down there or a room in the basement." But for an immediate arrest, there was nothing the officers could do if the defendant turned around and walked back down the side of the house and escaped again.

(5). The defendant's actions constituted a "serious" offense, felony eluding, as set forth in the indictment. The officers had indeed witnessed the offense.

(7). Probable cause - this issue has never been disputed.

(10). The defendant recently entered into the premises after the pursuit.

The officers were faced with a suspect (though one clearly identified as the perpetrator) likely to attempt to escape again and who had by his prior actions demonstrated no regard for their safety or the safety of others, placing the officers in a dangerous situation. Simply put, from that perspective, at that time and place, what were the officers to do? Let the defendant walk away and thence escape again?

I conclude exigent circumstances in fact existed and would reverse the trial court's grant of the motion to suppress.

For the foregoing reasons, I respectfully dissent.